**Entered on Docket**
**December 03, 2008**

_Bruce A. Markell_
_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | )    BK-S-05-20550-BAM |
| | )    Chapter 11 |
| CRYSTAL CASCADES CIVIL, LLC, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| RICHARD H. BUENTING, an Individual; and | ) |
| ROAD & HIGHWAY BUILDERS, LLC, a | )    Adv. Proceeding No.: 06-1082-BAM |
| Nevada Limited Liability Company, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CRYSTAL CASCADES CIVIL, LLC, a Nevada | ) |
| Limited Liability Company; BUSINESS BANK | ) |
| OF NEVADA, a Nevada corporation; the | )    Date:    January 26, 2009 |
| INTERNAL REVENUE SERVICE; and THE | )    Time:    1:30 P.M. |
| GORE FAMILY TRUST, Howard L. Gore and | ) |
| Kimberly Hawkins-Gore, Trustees, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**NOTICE OF AMENDED OPINION AND ORDER OF PUBLICATION**

The court issued its Opinion After Trial in this matter on November 12, 2008 (dkt. # 161).

The court now issues an Amended Opinion After Trial to correct typographical and citation format

errors. A copy of the amended opinion, marked to show changes, is attached as Exhibit 1.

The court orders the Amended Opinion After Trial to be published.

IT IS SO ORDERED.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit 1

1
2
3
4
5
6
7
8

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: ) | BK-S-05-20550-BAM |
| ) | Chapter 11 |
| CRYSTAL CASCADES CIVIL, LLC, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| RICHARD H. BUENTING, an Individual; and ) | |
| ROAD & HIGHWAY BUILDERS, LLC, a ) | Adv. Proceeding No.: 06-1082-BAM |
| Nevada Limited Liability Company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| CRYSTAL CASCADES CIVIL, LLC, a Nevada ) | |
| Limited Liability Company; BUSINESS BANK ) | |
| OF NEVADA, a Nevada corporation; the ) | Date:    November 8 and 9, 2007 |
| INTERNAL REVENUE SERVICE; and THE ) | Time:    9:30 a.m. |
| GORE FAMILY TRUST, Howard L. Gore and ) | |
| Kimberly Hawkins-Gore, Trustees, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <span style="color:red;text-decoration:underline">AMENDED</span> OPINION AFTER TRIAL

BRUCE A. MARKELL, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiffs, Gary H. Buenting and his 50% owned company, Road & Highway Builders, LLC ("Plaintiffs"), claim that their deeds of trust on debtor's real property were senior to two tax liens filed by the Internal Revenue Service ("IRS") against the same property. This claim of priority

matters because the real property involved has been foreclosed upon, and there are surplus proceeds of some $321,000. While not a small sum, it is less than either the Plaintiffs' or the IRS's claims. As a result, whoever is senior gets all the money. The loser gets nothing.

No one disputes that the Plaintiffs recorded their deeds of trust after the IRS recorded its tax lien notices. These notices identified the taxpayer only as "Crystal Cascades, LLC, a corporation." The debtor's full and proper name from the time it acquired the real property, however, was "Crystal Cascades Civil, LLC, a Nevada limited liability company." The IRS's notices thereby left out one of the nontrivial words of debtor's name, and misidentified its organizational form.

The main issue at the two-day trial was whether a reasonable search of the relevant real property records would have revealed either notice of tax lien. For the reasons set forth in this opinion, the court finds that a reasonable search would not have revealed either tax lien, and therefore federal law provides that the proceeds of the foreclosure are free of the IRS's liens. They may thus be distributed to Plaintiffs.

## II. FACTS

Crystal Cascades Civil, LLC, the debtor in this bankruptcy, owned three parcels of land in Clark County, Nevada (the "real property"). Debtor borrowed heavily against this real property. Business Bank of Nevada made loans secured by first- and second-priority liens against the real property; its first and second deeds of trust were recorded on July 15, 2004.[1] Debtor next encumbered the real property on February 4, 2005, borrowing money from and giving deeds of trust

---

[1]This adversary proceeding was originally filed to enjoin Business Bank of Nevada's foreclosure on the real property. At a hearing held February 27, 2006, the court allowed the foreclosure to proceed. Plaintiffs' complaint also sought declaratory relief regarding lien priority. Because no one contested Business Bank's priority, Business Bank was permitted to keep the foreclosure proceeds in satisfaction of its debt, and was thereafter dismissed from the action on March 3, 2006.

to Plaintiffs. A final deed of trust encumbering the real property was recorded February 16, 2005, in favor of the Gore Family Trust.[2]

At all relevant times, Edward G. Riggs controlled the debtor. Mr. Riggs filed Articles of Organization for the debtor with the Nevada Secretary of State on November 20, 2000. These stated the debtor's name to be Crystal Cascades, LLC.[3] In addition, Mr. Riggs used this name, Crystal Cascades, LLC, when he applied to the IRS for an Employment Identification Number, or EIN, for this newly created entity.

On May 31, 2001, an amendment was filed with the Nevada Secretary of State, changing the debtor's name from Crystal Cascades, LLC, to Crystal Cascades Civil, LLC. No change of name was ever filed with the IRS, although the debtor listed its changed name on its income tax returns and on the employment tax returns that led to the IRS liens at issue in this case. Debtor purchased the real property using its proper name, Crystal Cascades Civil, LLC, at some time after this May 31, 2001 name change.

During the third and fourth quarters of 2003, debtor failed to pay its employment taxes. This led to the IRS filing a notice of tax lien on August 11, 2004. Debtor again failed to pay all its employment taxes during the last two quarters of 2004. The IRS filed a second notice of tax lien on

---

[2]The Gore Family Trust, Howard L. Gore and Kimberly Hawkins-Gore, Trustees, were defendants in the action as originally filed, but Plaintiffs entered into a settlement agreement with them on October 18, 2007. The relevant provision of this settlement agreement, paragraph 17, states that "Plaintiffs agree to pay one third of all amounts recovered . . . by prevailing on the merits at trial to Gore up to a maximum of $100,000." In return, The Gore Family Trust agreed to dismiss, with prejudice, its counterclaim against the Plaintiffs. The Gore Family Trust was dismissed from this adversary proceeding on November 1, 2007.

[3]Information related to the debtor's past and present corporate status was retrieved from the Nevada Secretary of State website. NEVADA SECRETARY OF STATE, https://esos.state.nv.us/SOSServices/AnonymousAccess/CorpSearch/CorpSearch.aspx (*last visited* Nov. 12, 2008).

January 28, 2005. The IRS filed both tax lien notices in the Clark County Recorder's office using the designation "Crystal Cascades, LLC, a corporation."[4]

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on September 28, 2005. The court lifted the automatic stay of section 362 in favor of Business Bank of Nevada with respect to the real property on January 30, 2006, so that Business Bank could proceed with a foreclosure of the real property. Business Bank foreclosed on its senior interest at a foreclosure sale held on February 28, 2006. The sale generated a surplus of $321,000 over the amount owed to Business Bank.

Both the IRS and Plaintiffs claim this surplus, which has been held in escrow pending the resolution of this proceeding. The IRS contends that both the August 11, 2004 tax lien notice and the January 28, 2005 tax lien notice, filed under the name "Crystal Cascades, LLC," sufficiently identified the debtor, and therefore the tax liens were effective against third parties, entitling the IRS to the proceeds from the foreclosure sale of the real property. *See* Quist v. Wiesener, 327 F. Supp. 2d 890 (E.D. Tenn. 2004) (valid tax lien on real estate attaches with same priority to proceeds of sale of that real property). Plaintiffs contend that both notices failed to sufficiently identify the debtor, and therefore the IRS's tax liens were not effective as against third parties.

### III. LEGAL STANDARDS

#### *A. Statement of Jurisdiction*

Although this dispute looks very much like a simple dispute by two nondebtors governed by nonbankruptcy law, this court had and has jurisdiction to hear and determine the matter. As with all bankruptcy-based matters, the district court, and derivatively, this bankruptcy court, has jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); D. NEV. R. 1001. When Plaintiffs filed this adversary proceeding, the estate

---

[4]At trial, an IRS revenue officer explained that the IRS uses the name listed in the IRS master file to generate a tax lien notice, and this master file name is the name associated with the taxpayer's EIN, even if the taxpayer files tax returns under a different name.

owned the real property, making this a core matter arising in a case under title 11 under 28 U.S.C. § 157(b)(2)(K) & (O).[5] After the sale of the real property, the surplus proceeds were insufficient to benefit the estate's unsecured creditors. However, the creation and confirmation of this shortfall did not divest the court of jurisdiction over the parties. In the Ninth Circuit, subject matter jurisdiction in bankruptcy cases, as in other federal court cases, "should be determined as of the date that the complaint . . . was filed." Fietz v. Great W. Sav. (*In re* Fietz), 852 F.2d 455, 457 n.2 (9th Cir. 1988).

Additionally, even if this proceeding did not retain its character as a core matter, the court retained "related to" noncore jurisdiction. With respect to such jurisdiction, the Ninth Circuit has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) which states that a proceeding is "related to" if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Fietz*, 852 F.2d at 457 (citing *Pacor*, 743 F.2d at 994). Any change that occurred during the pendency of this action with regard to the origin of this court's jurisdiction "from arising in a case under title 11" to "related to" jurisdiction would not have been sufficient to alter the test for "related to" jurisdiction.[6] By continuing to prosecute the litigation through trial in this matter after the real property was sold, each party consented to this court's entry of final judgment under 28 U.S.C. § 157(c)(2).

*B. Substantive Law on Priorities*

Under the Internal Revenue Code, a tax lien arises at the time of assessment, 26 U.S.C. § 6322, on "all property and rights to property, whether real or personal, belonging to" a delinquent taxpayer. 26 U.S.C. § 6321. The primary power of a tax lien, however, lies not in its effect against

---

[5]Indeed, the IRS admitted that the action was a core proceeding in its answer to the complaint and in its trial statement.

[6]Although the Ninth Circuit has indicated that in some contexts, such as during the postconfirmation and postdischarge phase of a chapter 11 case, the "related to" test is more limited, with the test being "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter," State of Montana v. Goldin (*In re* Pegasus Gold Corp.), 394 F.3d 1189, 1194 (9th Cir. 2005), this case is not within the limited sphere of *Pegasus*.

the taxpayer, but in its priority vis-à-vis other lienholders and subsequent purchasers. Under the Federal Tax Lien Act, a tax lien is valid as against any subsequent purchaser or holder of a security interest, but only if "notice thereof which meets the requirements of [26 U.S.C. § 6323(f)] has been filed." 26 U.S.C. § 6323(a); *see also* United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 88 (1963) (stating that a tax lien notice is not valid against real property until placed in the public record); *and* TREAS. REG. § 301.6323(a) ("The lien imposed by section 6321 is not valid against any purchaser . . . [or] holder of a security interest . . . until a notice of lien is filed in accordance with § 301.6323(f)-1.").

Section 6323(f) governs the place of filing for tax lien notices, and defers to state law to select the proper office. 26 U.S.C. § 6323(f)(1)(A)(i). Nevada has chosen "the office of the county recorder in which the real property subject to the liens is situated." NEV. REV. STAT. § 108.827.2. Here, there is no dispute that the real property is in Clark County, Nevada, and that the Clark County Recorder's office was the proper place to file a notice of tax lien.

Section 6323(f) gives the Secretary of the Treasury the authority to prescribe the content of the notice. 26 U.S.C. § 6323(f)(3). The applicable regulation is not particularly helpful to the resolution of this dispute; with respect to the appropriate name to use, it requires only that the notice of lien "must identify the taxpayer." TREAS. REG. § 301.6323(f)-1(d)(2).

The boundaries of proper identification have been left to case law. In this circuit, case law begins with an analysis of 26 U.S.C. § 6323(f)(4). Under that section, if applicable state law provides that:

> a deed is not valid as against a purchaser of the property who (at the time of the purchase) does not have actual notice of knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed,

and if it also provides that "a reasonable inspection of the index" would not reveal the existence of the notice of IRS's tax lien, then the IRS's tax lien is not enforceable against third parties. 26 U.S.C. § 6323(f)(4). *See* Kivel v. United States, 878 F.2d 301 (9th Cir. 1989).

In *Kivel*, the Ninth Circuit reviewed section 6323(f)(4), and stated:

> This statute governs the validity of liens in a state, such as California, whose laws hold that a deed is valid against a purchaser of property only if the deed has been entered and recorded in the public index in such a manner that a reasonable inspection of the index will reveal the existence of the deed and whose recording system provides an adequate system for the public indexing of federal tax liens. In such a state, the federal requirements are not met unless the fact of filing is recorded in the index "in such a manner that a reasonable inspection of the index will reveal the existence of the lien."

*Id*. at 303-04 (citing 26 U.S.C. § 6323(f)(4)).

Nevada is no different than California with respect to real estate priorities. Under Nevada law, a purchaser of real property with notice of a prior interest takes subject to that interest. Nev. Rev. Stat. § 111.320; Buhecker v. R.B. Petersen & Sons Const. Co., Inc., 112 Nev. 1498, 1500, 929 P.2d 937, 939 (1996); *In re* Grant, 303 B.R. 205, 211 (Bankr. D. Nev. 2003). To implement this general rule, Nevada law provides that every document recorded in a county recorder's office gives notice to all persons upon recordation, Nev. Rev. Stat. § 247.190.1, and mandates that county recorders maintain grantor-grantee indices that enable searchers to find recorded documents. Nev. Rev. Stat. § 247.150.1. Further, in Clark County, this indexing is supplemented by an Internet-based search engine that allows searching by entity name. *See* Nev. Rev. Stat. § 247.150.9(b). As a consequence, Nevada law provides that properly filed documents provide notice that can affect priority.

The issue then becomes how an entity would go about constructing a reasonable search of the Clark County Recorder's office index to discover prior liens or interests. Many courts have struggled when determining what constitutes a reasonable search of a recording office. Some have enforced federal tax liens even after finding an error in the taxpayer's name, so long as a reasonable search of the applicable index would have uncovered the notice of tax lien. *See, e.g.*, United States

v. Crestmark Bank (*In re* Spearing Tool and Mfg. Co., Inc.), 412 F.3d 653 (6th Cir. 2005)

("Spearing Tool & Mfg. Co., Inc." rather than "Spearing Tool and Manufacturing Co., Inc."), *cert.*

*denied*, 127 S.Ct. 41 (2006); Hudgins v. IRS (*In re* Hudgins), 967 F.2d 973, 976 (4th Cir. 1992)

("Hudgins Masonry, Inc." rather than taxpayer's personal name, "Michael Steven Hudgins"); *Kivel*

*v. United States*, 878 F.2d ~~301 (9th Cir. 1989)~~<u>at 305</u> ("Bobbie Morgan" rather than "Bobbie Morgan

Lane"); United States v. Polk, 822 F.2d 871 (9th Cir. 1987) ("Roy Bruce Polk" rather than "Bruce

Polk"); Tony Thornton Auction Serv., Inc. v. United States, 791 F.2d 635, 639 (8th Cir. 1986)

("Davis's Restaurant" and "Daviss (*sic*) Restaurant" rather than "Davis Family Restaurant");

Richter's Loan Co. v. United States, 235 F.2d 753 (5th Cir. 1956) ("Freidlander" rather than

"Friedlander"); *Quist v. Wiesener*, 327 F. Supp. 2d ~~890 (E.D. Tenn. 2004)~~<u>at 892</u> ("Joint Effort"

rather than "Joint Effort Productions, Inc."); Whiting-Turner/A.L Johnson v. P.D.H. Development,

Inc., 184 F.Supp.2d 1368, 1379 (M.D. Ga. 2000) ("PD Hill Development Inc." rather than "P.D.H.

Development, Inc."); Brightwell v. United States, 805 F.Supp. 1464, 1471 (S.D. Ind. 1992)

("William S. Van Horn" rather than "William B. VanHorn"); Du-Mar Marine Serv., Inc. v. State

Bank & Trust Co., 697 F. Supp. 929 (E.D. La. 1988) ("Lamant Marie Service Number 2, Inc." rather

than "LaMart Marine Service No. 2, Inc."); United States v. Sirico, 247 F.Supp. 421 (S.D.N.Y.

1965) ("Sirico, George" and "Sirico, A." rather than "Assunta Sirico").

Conversely, other courts have found that third parties' property interests are superior to the

IRS's interest when the notice of tax lien misspells or otherwise materially alters a taxpayer's name

in such a way that a reasonable search would not reveal the relevant notice of tax lien. *See, e.g.*,

Walsh v. United States (*In re* Focht), 243 B.R. 263 (W.D. Pa. 1999) ("Country Fochts Restaurant &

Bakery [and] Lois E. Focht, Gen. Ptr.[,]" rather than "Ronald D. Focht"); Fritschler, Pellino,

Schrank & Rosen, S.C. v. United States, 716 F. Supp. 1157 (E.D. Wis.1988) ("Allen G. Casey"

rather than "Allen J. Casey"); Haye v. United States, 461 F. Supp. 1168 (C.D. Cal. 1978)

("Castello" rather than "Castillo"); United States v. Ruby Luggage Corp., 142 F. Supp. 701

(S.D.N.Y. 1954) ("Ruby Luggage Corp." rather than "S. Ruby Luggage Corp."); Continental Invs. v.

United States, 142 F. Supp. 542 (W.D. Tenn.1953) ("W.R. Clark, Sr." rather than "W.B. Clark, Sr."); Reid v. IRS (*In re* Reid), 182 B.R. 443, 446 (Bankr. E.D. Va. 1995) ("Gary A. Reid" rather than "Cary A. Reid"); Ducote v. United States (*In re* de la Vergne), 156 B.R. 773 (Bankr. E.D. La. 1993) ("Hughes J. de la Verone II Payroll Account " rather than "Hugues J. de la Vergne II"); Robby's Pancake House v. Walker (*In re* Robby's Pancake House), 24 B.R. 989 (Bankr. E.D. Tenn. 1982) ("LaForce-Walker Construction Co." rather than "Robert Walker").

The only unifying concept in this welter of cases is that each court had to determine whether a reasonable search would have put a searcher on notice of the errant tax lien notice. The seeming discrepancies among the various cases can be explained only by one salient fact: locality. Because different recording offices index their records differently, a person might very well use different searches in different localities, even when presented with the same name. A searcher would construct different searches, for example, in jurisdictions that maintain only grantor-grantee indexes than he or she would if the jurisdiction permits full-name searching by computer, with the added function of "wildcards."

That brings the matter to Clark County, Nevada. How would a reasonable person construct a search of the Clark County Recorder's office for a debtor named Crystal Cascades Civil, LLC? And would that search reveal the IRS's notice of tax lien if it was filed under the name "Crystal Cascades, LLC, a corporation?" The parties agree on the standard to be applied to these questions, but differ on how to apply it. Trial was held, and over its two-day course, each side produced experts who testified and disagreed as to how the relevant standard should be applied.

### IV. THE TESTIMONY

At trial, Mr. Buenting testified, as did an IRS agent. Their testimony was, for the most part, unexceptional. Mr. Buenting explained that he was a general contractor who dealt with Mr. Riggs and the debtor and that the debts owed to him and his company arose when the debtor needed advances to finish work under contract with Plaintiffs. He also testified as to how he came to bid on the real property, and the nature of his post-acquisition dealings with the IRS.

Mr. Bauer, the IRS agent, testified as to how the IRS generates notices of tax liens. In essence, Mr. Bauer testified that the IRS maintains a master file with taxpayer names and taxpayer identification numbers, and that the names and numbers used are generated by the taxpayer's initial application, which in this case was an application for an employer identification number. The IRS does not change the name thereafter, and uses that original name in all notices of tax liens, although Mr. Bauer did testify that a revenue agent generating a notice of tax lien has discretion to add additional names on the notice.

The remaining testimony, however, proved more contentious. Plaintiffs and the IRS each produced one expert from the title insurance field to testify regarding what constitutes a reasonable and diligent search of the Clark County land records. Each expert gave his or her opinion about what constitutes a reasonable and diligent search from the perspective of a title officer working at a title insurance company and having access to its proprietary databases, and what constitutes a reasonable and diligent search from the perspective of a nonprofessional person having access only to the Clark County Recorder's office. Both experts had worked in the title insurance industry for many years, and both had substantial experience conducting title searches using title company proprietary databases, called "title plants," and using the Clark County Recorder's office grantor-grantee index. Both experts also acknowledged that nowadays most nonexperts would search Clark County real property records by computer.[7]

*A. Testimony of Plaintiffs' Expert, James P. Kiernan*

Plaintiffs' expert witness was James P. Kiernan. Mr. Kiernan had recently retired as the owner, president, and chief executive officer of Northern Nevada Title Company. Over the course of

---

[7]Indeed, there was testimony that Clark County does not allow unrestricted access to its grantor-grantee index to the general public, and typically directs searchers who appear in person to computer terminals maintained in the public area of the recorder's office. The Clark County search site is http://recorder.co.clark.nv.us/extReal/default.asp (*last visited* Nov. 12, 2008).

a 40-year career, Mr. Kiernan worked at several different title companies and held a variety of positions that required him to become an expert in searching real estate titles.

Mr. Kiernan first testified how title companies create their proprietary title plants and what methods and procedures would be followed by a professional title officer conducting a title search. Title companies, either individually or in conjunction with other title companies, compile all filed or recorded documents affecting real property in a given locality (such as Clark County) and create a chain of title for each parcel of property. The chain of title includes documents that are property specific, such as deeds of trust, and documents that affect all property owned by a particular person, such as tax lien notices. Unlike the recording system used in the county recorder's office, these chains of title are indexed primarily by legal description. In addition, title plants collect information not normally filed with the county recorder's office, such as probate and bankruptcy information regarding grantors and grantees. Collectively, these chains of title and bits of information make up a title plant. A key aspect of title plants, however, is that they are accessible only by employees of a title company affiliated with that title plant.[8]

Mr. Kiernan next explained that what constitutes a reasonable and diligent search for a professional title officer is completely different from a reasonable and diligent search by a nonprofessional searcher. Professional title officers are, according to Mr. Kiernan, subject to a higher standard because they have access to title plants and have been trained extensively in "how to search, what to look for, [and] how to operate the title plant" they are using. These title officers are trained to understand and classify hundreds of different types of documents that affect real property.[9]

---

[8] Mr. Kiernan explained that the general view in the title industry is that allowing public access to title plants would subject title plant owners to federal credit reporting regulations and could subject the title plant operators to liability if a party improperly relied on the title plant data.

[9] Here, Mr. Kiernan was speaking about title officers generally. There was also testimony about a specialized type of title officer, known as a "High-Li" or high liability officer. High-li officers deal with title insurance involving a risk of high liability being imposed against the title company. During the course of the trial, there was conflicting testimony about whether a search performed by a High-Li officer is any different than a search performed by a non-High-Li title officer. According to Mr.

According to Mr. Kiernan, a title officer conducting a reasonable and diligent search may in fact have conducted a search using the search term "Crystal Cascades," assuming that a search of the entity name Crystal Cascades Civil, LLC, returned documents indicating Crystal Cascades was a name used by the debtor in the past.

Mr. Kiernan also gave his opinion on what constitutes a reasonable and diligent search by a nonprofessional searcher. He explained that the Clark County Recorder's office uses a grantor-grantee index, which indexes property alphabetically by the names shown in the documents affecting the real property, rather than by legal description (like a title plant). To determine whether there are liens affecting specific property through a search of the recorder's office, a searcher must first run a grantee search using the name of the property's current owner. The results of this search will provide the name of the current owner's grantor. The searcher must then run a grantee search using that grantor's name. Mr. Kiernan explained that unless the searcher is building a chain of title, a searcher generally does not need to repeat this process (grantee-back) beyond 20 years' worth of documents. The next step is to run grantor searches using all the names discovered in the grantee searches. These grantor searches will reveal any liens affecting the grantors, and thereby allow a searcher to determine if any of these liens have attached to a particular parcel of real property.

Clark County offers the public a computerized database in which grantors and grantees may be searched by name. This index also has a "wild card" feature; when a name is searched, the search results will not only contain documents with that name, but also documents that have the name searched as a root. For example, using Karl as a search term would return all documents in which anyone whose first name was Karl was involved (but not Carl), as well as names such as "Karl's Junior," "Karlton's Creations," and "Karl, Betty, and Jane, LLC."

---

Kiernan, the difference between the search conducted in a non-High-Li case and a High-Li case concerns the level of scrutiny that the results of the search are subjected to, rather than a difference in the method of searching."

For this case, this means that a search using the debtor's actual name, Crystal Cascades Civil, LLC, would not reveal the IRS lien, because the lien would have been indexed under Crystal Cascades, Inc. A search under one root of the debtor's name, "Crystal Cascades," however, would have revealed the IRS's tax lien notices,[10] as would have a search under just the word "Crystal."

Against this background, Mr. Kiernan testified that a reasonable and diligent search of the Clark County Recorder's office records, conducted by a nonprofessional searcher, would be constructed by starting with the exact name from the grant deed of the subject property. He also stated that, based on examining a copy of the search results from the Clark County Recorder's office for "Crystal Cascades Civil, LLC," a reasonable person would conclude that any property owned in Clark County by Crystal Cascades Civil, LLC, would not be subject to any tax lien.

*B. Testimony of the IRS's Expert, Betty Waters*

The IRS called Betty Waters as its expert.[11] Ms. Waters is the president of Clark County Title Services, a title plant that is co-owned by seventeen title companies operating in the Las Vegas area. Ms. Waters has held a variety of positions in the title industry since 1962, worked at Clark County Title Services since 1987, and served as its president since 1994.

The majority of Ms. Waters's testimony related to the construction of a reasonable and diligent search conducted by a title officer. She testified extensively about her personal searching

---

[10]It also would have revealed the following entities, with the number of documents for each entity represented by the number in parentheses after the name: Crystal Cascades Construction (2); Crystal Cascades Inc (7); Crystal Cascades Inc Pool Division (1); Crystal Cascades LLC (2); Crystal Cascades LLC, ' (1) (with the ending apostrophe distinguishing this entry from the prior entry); Crystal Cascades Pools & Spas (2); Crystal Cascades Pools & Spas LLC (10); Crystal Cascades Pools and Spas LLC (1).

[11]The IRS did not formally retain Ms. Waters as an expert because a shareholder of Ms. Waters's employer objected. The IRS instead subpoenaed Ms. Waters as a nonexpert witness, and attempted to qualify her as an expert on the stand. The court condoned this unusual procedure only because Plaintiffs knew the IRS intended to call her as its expert, and they had previously deposed Ms. Waters as a potential expert. Against this background, the court specifically found that the Plaintiffs were not prejudiced by this testimony.

philosophy/method of "less-is-more." This method is practiced by constructing searches using fewer search terms to find a greater number of documents, even though some of those documents may be irrelevant to a particular parcel. Title officers, according to Ms. Waters, often use this "less-is-more" method because it increases the chance of discovering documents relevant to the parcel on which the company is considering issuing a title insurance policy. Ms. Waters said that she would apply this philosophy whether searching in a title plant or searching the Clark County Recorder's office. Using this philosophy, a search would use just "Crystal Cascades," and so would find the tax lien notices.

Ms. Waters also gave her opinion as to what would constitute a reasonable and diligent search for a nonprofessional using the Clark County Recorder's website. Ms. Waters testified that if she was given the name Crystal Cascades Civil, LLC, and asked to search the county recorder's website, she would input a search for "Crystal Cascades Civil," taking advantage of the automatic wildcard to return documents ending in "LLC" or any other designation.[12]

Ultimately, and surprisingly, although Ms. Waters asserted that although she would have found the IRS tax lien notices, her opinion was that the average reasonably diligent user looking for liens on property owned by Crystal Cascades Civil, LLC would input the legal name of the entity and not use a less-is-more approach.[13] As a result, average users would not have found the IRS's notices of tax liens because they would have searched under "Crystal Cascades Civil," and not under "Crystal Cascades." In addition, Ms. Waters admitted on cross-examination that an officer who is

_____

[12] In discussing the Clark County Recorder's website, Ms. Waters explained that it provides an automatic wildcard after the last search term inputted, which returns any record with more words or characters than have been entered.

[13] During cross-examination, Defendant's counsel and Ms. Waters had the following exchange:

Q: Now, if you were asked to search for liens that affect Crystal Cascades Civil, LLC, what search terms would you use?
A. If I was doing it personally, I would use Crystal Cascades because it's – it's a business name, but average user would not. They would use Crystal Cascades Civil because that's the full name of the corporation.

16

not conducting a High-Liability title insurance search would also likely reject her less-is-more method. From this, the court concludes that a regular title insurance searcher would also not have found the IRS's tax lien notices.

### V. Discussion

Both Ninth Circuit precedent and Section 6232(f) require that to be effective against third parties, a notice of tax lien must be filed so that a reasonable search would uncover it. *Kivel*, 878 F.2d at 303-04; *Polk*, 822 F.2d at 872-73. Although simple in formulation, this test gives rise to several important questions. Does the test assume a professional searcher or just the average nonprofessional? To what extent could or should either be charged with knowledge of how Clark County indexes its records? And if they are charged with such knowledge, to what extent should they employ it in developing the ephemeral reasonable search? It is to these questions that this opinion now turns.

### *A. Professional Title Officer Search Versus Nonprofessional Search*

The parties' expert witnesses, both title industry professionals, gave their opinions as to what constitutes a reasonable and diligent search for a title officer and for a nonprofessional searcher. Not surprisingly, the search parameters are different for each group. Title officers have extensive training in searching land records and, depending on the underwriting standards they are following, may investigate a parcel beyond the bounds of a reasonable and diligent search. This fact would initially disqualify the higher standard applicable to title officers from the applicable reasonableness test of Section 6232(f). Additionally, to hold that the only reasonable search would be one performed by a professional title officer would imply that the only reasonable and diligent search is one performed using a proprietary title plant like the one operated by Clark County Title Services (because a reasonable and diligent title officer would conduct a search using a title plant).

This in turn would render the searching apparatus operated by the Clark County Recorder's office irrelevant, something that this court will not do, in part because the structure of Section 6232 forbids it; that section looks to publicly available land records in its formation of standard for tax

liens. This also means that a reasonable search would have to include paying for an independent title search in order to gain access to the data in various title plants; the federal standards do not refer to or incorporate such nonproprietary information, and thus what a title search produced by a title company is of little relevance to the application of section 6232(f) to this case. As a result, this court finds that the standard for what is a reasonable search must be viewed from the perspective of a nonprofessional searcher.

### B. Reasonable Search Conducted by a Nonprofessional Searcher

A reasonable and diligent searcher has a duty to investigate the documents that underlie the search result obtained. *Kivel*, 878 F.2d at 304. If, as the IRS argues, a reasonable and diligent search is one that employs a less-is-more search methodology and uses the two-term parameter "Crystal Cascades," the searcher would have discovered a filing in the name of Crystal Cascades, LLC. Upon further examination, the searcher would find that the property address and employer identification numbers matched those of the debtor in this case and would have constructive notice of the tax liens. *See id.* at 305.

However, the expert testimony establishes that a reasonable nonprofessional searcher would not have used the two-term search parameter "Crystal Cascades." Although the testimony of the parties' experts was at times convoluted, the experts agreed that a reasonable search conducted by a nonprofessional searcher would be constructed using the name from the grant deed that vested the property in the current owner, or any reasonable truncation of that name.[14] That name is Crystal Cascades Civil, LLC.

---

[14]For example, a reasonable search would probably omit "noise" words such as "LLC," "Inc." or similar designations of organizational status. By way of analogy, the Nevada Secretary of State omits such "noise" words when conducting searches of the index of Uniform Commercial Code financing statements. *See* NEV. ADMIN. CODE § 104.370.2(d) ("Words and abbreviations at the end of a name that indicate the existence or nature of an organization as set forth in the "IACANext Hit List of Ending Noise Words" adopted by the International Association of Corporation Administrators will be disregarded.").

Other cases on electronic or computer searches confirm the common-sense notion that a balance has to be struck between exactitude in searching – searching under the debtor's precise name, and only that name – and latitude in searching – searching under some variant of the debtor's exact name. In *Quist v. Weisner*, 327 F. Supp. 2d ~~890 (E.D. Tenn. 2004)~~at 890-95, for example, the IRS had filed a notice of tax lien naming the taxpayer as "Joint Effort." After the IRS filing, a creditor was pursuing an entity whose name was "Joint Effort Productions, Inc.," and had levied and caused to be sold some of that entity's property. Both the IRS and the creditor then laid claim to the approximately $10,000 in proceeds of the execution sale.

The court noted that the records of the relevant recording entity – the Knox County Registry of Deeds – were computerized. It also found that a search of "Joint Effort" would reveal both the creditor's lien and the IRS's notice of tax lien, while a search under the debtor's exact name, "Joint Effort Productions, Inc." would reveal only the creditor's lien. Notwithstanding this, the court found that the IRS's lien attached to the proceeds and was superior. Its logic required another step: an electronic search of Tennessee's Secretary of State's website, *Tennessee Anytime*. A search of that website under either "Joint Effort" or "Joint Effort Productions, Inc." would show that the two names were both registered for the same entity; that is, under Tennessee law, they were the different legitimate names for the same legal entity. Given that, the court had no trouble in finding that a filing of a notice of tax lien under "Joint Effort" served to place third parties on notice of the IRS's lien, as that name was a recognized, legitimate name of the debtor.

In this case, of course, the name used by the IRS was not the debtor's legal name as of the time it acquired the real property and as of the time of Plaintiffs' deed of trust filing.[15] This raises the issue of whether a reasonable person would do an inspection of not only the Clark County

---

[15]If "the IRS has notice that a delinquent taxpayer has changed his or her name, and where the Notice of tax lien is filed under the taxpayer's original name, the IRS is under an affirmative duty to refile the Notice of tax lien to show the taxpayer's new name." Davis v. United States, 728 F. Supp. 513, 516 (C.D. Ill. 1989).

1   records, but also the Nevada Secretary of State's records to see if there were any prior names of the

2   debtor that might need to be searched. This court holds that they would not.

3       As established in Sum of $66,839.59 v. IRS, 119 F. Supp. 2d 1358 (N.D. Ga. 2000), not

4   every action possible need be taken in order for a search to be reasonable. *Id.* at 1362 (searcher not

5   required to go beyond public indices to request county clerk to gain access to daily filings, even

6   when evidence indicated that clerk would honor such requests); *see also* Associates Fin. Serv. Co. v.

7   Brown, 258 Wis.2d 915, 656 N.W.2d 56 (2002) (even though creditor could have found errant deed

8   with incorrect legal description through computerized searching, no duty to search for such deeds,

9   and no notice imparted from fact that such deed could have been found with an expansive search).

10      As set forth above at note 10, there were some twenty-six ~~other entities~~documents that a

11  shortened search of "Crystal Cascades" would have revealed, and to connect any of those

12  ~~entities~~documents back to the debtor would have required an extensive search of not only the

13  records indexed and filed at the Clark County Recorder's office, but also at the Nevada Secretary of

14  State's office. Given the testimony of both experts, it would have been unreasonable to use this

15  truncated search to find liens that had been misfiled as was the IRS's notice of tax lien.

16      This is not a case where the IRS made a minor mistake in filing its tax lien notice, such as by

17  using a common abbreviation or making a minor misspelling in the taxpayer debtor's name that

18  notwithstanding the error would require a searcher to investigate further. *See, e.g.*, *Crestmark Bank*,

19  412 F.3d at 656 ("Mfg." and "&" for "Manufacturing" and "and", respectively); *see, e.g.*,

20  *Brightwell*, 805 F. Supp. at 1470-71 (incorrect middle initial and extra space inserted in last name).

21  Rather, the IRS's notices of tax lien in this case omitted a key part of the debtor's name. Given the

22  existing search logic[16] and manner in which Clark Country constructed its search function, that

23  omission made the notices inaccessible to searchers who later used the debtor's real name, or any

24  _____

25      [16]No testimony was introduced as to when Clark Country first implemented its computerized
    searching. The parties assumed, and the court accepts that assumption, that the Clark County's search
26  function has been the same at all relevant times during this case.

reasonable truncation of that name. It was undisputed that a search under the name listed on the grant deed by which the debtor acquired the real property would not return an entry in the name of Crystal Cascades, LLC. Therefore, as filed, the IRS's notices of tax lien did not impart constructive notice on third parties. The IRS's liens were therefore not effective as against third parties. Plaintiffs are entitled to the surplus proceeds from the foreclosure sale.

## VI. ELECTION OF REMEDIES

The final issue in this case concerns the IRS's election of remedies. Plaintiffs argue that the IRS should be estopped from asserting a claim to any portion of the foreclosure sale proceeds because the IRS effectively redeemed the property before trial. The IRS responds that it did not redeem the property and therefore should not be estopped from asserting a claim to the sale proceeds.

After this court permitted Business Bank, the most senior lienholder, to foreclose upon its interest in the real property, a public sale was held. Mr. Buenting's company, Road and Highway Builders, was the purchaser at the foreclosure sale. Subsequently, the IRS approached Mr. Buenting and stated its intention to redeem the property under 26 U.S.C. § 7425. Because Mr. Buenting had already made additional investments in the real property that he would not be compensated for by the redemption, he negotiated a release of the IRS's claim of a right to redemption in exchange for his payment of $100,000. Plaintiffs claim that the IRS's acceptance of this payment extinguished any interest that the IRS might have had in the property, and, having elected redemption, the IRS cannot establish a claim to the surplus proceeds. The IRS argues that it merely accepted a payment for a certificate of release of its right of redemption (Government's Trial Exhibit 33), that it never exercised its right to redeem, and therefore it is not estopped from asserting a claim to the foreclosure sale proceeds.

The United States has a right of redemption under 26 U.S.C. § 7425(d) when property on which it has a tax lien is sold at a nonjudicial foreclosure sale. As interpreted by the Ninth Circuit, "the statute plainly and unambiguously allows the IRS to redeem the entire real property that was

sold at a foreclosure sale *if any portion of the real property was subject to a federal tax lien prior to the foreclosure sale*." Vardanega v. I.R.S., 170 F.3d 1184, 1186 (9th Cir. 1999) (emphasis added). The redemption statute and applicable Treasury regulations are clear that a precondition of the IRS's right of redemption is the proper filing of the tax lien. *See* 26 U.S.C. § 7425(b)(1); TREAS. REG. 301.7425-2(a) (explaining that the application of section 7425 requires the notice of federal tax lien to be filed in accordance with section 6323(f); TREAS. REG. 301.7425-4 (requiring, in each example, that "a notice of tax lien is filed under section 6323(f)" as a precondition to the application of the redemption statute).

As set forth above, the IRS's notices of tax lien were not filed in accordance with 26 U.S.C. § 6323(f) and thus its tax liens were not effective against third parties. Therefore, the IRS had no legal right of redemption which arose under section 7425(d) when the real property was sold at foreclosure.[17] Further, even if the IRS had properly filed the tax lien notices and a right of redemption had arisen, it would not affect the court's decision on the issue of election of remedies. It is simply the case that accepting payment not to ~~not~~ exercise a right of redemption is not itself a redemption; indeed, it is logically inconsistent. As a result, the IRS's execution of a certificate of release in exchange for a payment of $100,000 was not an election of remedies that estopped it from asserting a claim to the surplus foreclosure sale proceeds.

## VII. CONCLUSION

Plaintiffs are entitled to judgment awarding them the surplus proceeds, subject to their settlement with the Gore Family Trust. This opinion shall constitute the findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052. A judgment in favor of Plaintiffs shall be entered in accordance with FED. R. BANKR. P. 9021.

---

[17]Because the validity of the IRS lien in connection with the $100,000 redemption transactions was not litigated by the parties, the court expresses no opinion on the initial or continuing validity of the transaction by which the IRS received its $100,000.

1

2   Copies sent to:
    CANDACE C CARLYON ltreadway@sheacarlyon.com, ccarlyon@sheacarlyon.com;
3   bankruptcyfilings@sheacarlyon.com;manthony@sheacarlyon.com

4   JEFFREY R. HALL jhall@sheacarlyon.com, jusam@hutchlegal.com

5   R CLAY HENDRIX RCH@RCLAYHENDRIX.COM, CRD@RCLAYHENDRIX.COM

6   MICHAEL LEHNERS mikelehners@yahoo.com

7   KAREN L. POUND karen.l.pound@usdoj.gov, western.taxcivil@usdoj.gov,
    Goud.P.Maragani@usdoj.gov
8
    JOHN B SNYDER john.snyder2@usdoj.gov
9
    CRYSTAL CASCADES CIVIL, LLC
10  2640 LAS VEGAS BLVD NORTH
    NORTH LAS VEGAS, NV 89030
11
    Gregory A. Brower
12  Lloyd D. George Federal Courthouse
    333 Las Vegas Blvd. S., Ste. 5000
13  Las Vegas, NV 89101

14                                                          # # #

15

16

17

18

19

20

21

22

23

24

25

26